Filed 4/18/23  Wu v. Lian Tong, LLC CA1/3
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BING WU et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>LIAN TONG, LLC, et al.,<br><br>Defendants and Respondents. | A163131, A163455, A163635, A163768<br><br>(City & County of San Francisco Super. Ct. No. CGC-21-589219)<br><br>**ORDER MODIFYING OPINION; AND DENYING PETITION FOR REHEARING**<br>**[NO CHANGE IN JUDGMENT]** |

BY THE COURT:*

It is ordered that the opinion filed herein on March 30, 2023, be modified as follows:

1. On page 5, in footnote 1, the phrase "such as the discovery order" is deleted so that the sentence now ends ". . . in the Appellants' Appendix."

2. On page 14, line 6, the name "Victoria" is deleted and replaced with the name "Veronica."

These modifications do not effect a change in the judgment.

Appellant's petition for rehearing is denied.

Dated:_____          _____ P.J.

---

* Tucher, P.J., Fujisaki, J., and Rodríguez, J. participated in the decision.

Filed 3/30/23  Wu v. Lian Tong, LLC CA1/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BING WU et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>LIAN TONG, LLC, et al.,<br><br>        Defendants and Respondents. | A163131, A163455, A163635, A163768<br><br>(City & County of San Francisco Super. Ct. No. CGC-21-589219) |

Appellants, Bing Wu and Kai Ming Lei, filed this malicious prosecution action against two sets of respondents, Lian Tong, LLC and its owner Sheng Liu (collectively, Lian Tong), and Lian Tong's former counsel, the Horner Law Group, P.C., Clifford Horner, and Brendan Dooley (collectively, Horner Law). Appellants contend that respondents lacked probable cause and acted with malice when they pursued a claim against appellants for breaching a restaurant construction contract.  Lian Tong and Horner Law each filed special motions to strike appellants' complaint pursuant to California's anti-SLAPP statute.  (Civ. Proc. Code, § 425.16, subd. (b); undesignated statutory references are to this code.)  The trial court granted both motions and awarded respondents attorney fees.  We affirm.

1

# BACKGROUND

## I. The Underlying Case

The underlying case arose out of a failed project to construct a restaurant at two commercial addresses (565 and 575) on 4th Street in San Francisco.

### A. The Contracts

Property owner Lian Tong retained Bing Wu Construction Company (BW Construction) to work on its restaurant project pursuant to a contract executed on March 30, 2014 (the BW contract). Three individual contractors signed the BW contract on behalf of BW Construction: James Chen, who drafted the contract, and appellants, Wu and Lei. The BW contract was executed on behalf of Lian Tong by Yi Fang Liu (Y.F. Liu), who is the father of respondent Sheng "Leo" Liu (Liu). The seven-page contract outlines work BW Construction agreed to perform, which ranged from demolition to finishing work to other "miscellaneous" tasks. (Block capitalization omitted.) The contract price was $400,000, which was to be paid in installments as various stages of the project were completed. The last two terms of the contract became the focus of the underlying case, so we repeat them here:

"**Time of Performance** [¶] The work specified in this contract shall be started immediately once the owner provides the approved permits and drawings. The duration for the whole project is about 6 months and the whole work shall be completely done after the 6 months of the beginning date.

"**Permits and Approvals** [¶] Owner shall pay for all the fees to apply for the state and local permits, the cost to apply for the utilities services and all necessary surveys for performing the work specified above. If the contractor pays the permit fee during the time for processing, the owner shall

2

reimburse the money to the contractor per invoice.  The owner is responsible for providing the approved & stamped [*sic*] plan for #575 which is supposed to be built [as] a restaurant."  This last sentence was handwritten on the typed page.

Ten months later, on February 6, 2015, Chen and Y.F. Liu executed a "Contract Termination Agreement" on behalf of BW Construction and Lian Tong.  The document was handwritten by Chen in Chinese on a piece of lined paper.

On February 12, 2015, Chen on behalf of Egoodat Inc. and Y.F. Liu on behalf of Lian Tong executed a new construction contract (the Egoodat contract).  This written agreement is a marked up version of the BW contract that substituted Egoodat's name for BW Construction's name at the top of the document and added the following handwritten term at the bottom:  "the whole project is awarded to Egoodat, Inc. since the date of 2/12/15."  Appellants are not parties to the Egoodat contract.

## B.  The Lawsuit

In February 2016, Lian Tong filed a complaint for damages arising out of the restaurant project, alleging causes of action for breach of contract against BW Construction, breach of contract and negligence against Egoodat, and fraud and breach of contract against Chen.  As support for these claims, Lian Tong alleged the following facts:  The BW contract Chen negotiated on behalf of BW Construction provided that work would begin "immediately" once Lian Tong provided "approved permits and drawings," and the parties "agreed and understood" that the project would be completed within six months, "or approximately by early October 2014."  For months, Chen made false representations that work was progressing.  In February 2015, Lian Tong discovered that no work had been completed, and Chen admitted that

3

his business partner had stolen the BW contract funds, which prevented BW Construction from starting work. Because BW Construction failed to perform, Lian Tong had to find another contractor, and Chen proposed that his other company, Egoodat, would do the work. On February 12, 2015, the parties made handwritten changes to the BW contract and then executed that document. Egoodat's work was deficient, and the project was never completed. Ultimately, Lian Tong was forced to terminate its lease with its restaurant tenant and suffered damages in excess of $1,000,000.

Chen and Egoodat filed a joint answer to Lian Tong's complaint, and Egoodat also filed a cross-complaint against Lian Tong for breach of contract and "Common Counts." Initially, BW Construction failed to respond to the complaint, but in September 2016, appellants obtained relief from default and filed a general denial answer on behalf of BW Construction, which they identified as their fictitious business name.

Appellants also filed a cross-complaint against Lian Tong and Y.F. Liu for breach of contract, fraud, and declaratory relief. Appellants alleged that Lian Tong breached the 2015 termination contract by failing to release appellants from the BW contract and that Y.F. Liu fraudulently induced appellants to execute the 2015 contract by falsely representing that appellants would be released from the BW contract.

As support for its cross-claims, appellants alleged the following facts: After executing the BW contract, Lian Tong caused delays that prevented BW Construction from starting work on the project by failing to provide approved plans and failing to obtain permission from its property owners' association. Due to such delays, "none of which were caused" by appellants, it became "impracticable and/or impossible" for BW Construction to perform the BW contract. On February 6, 2015, appellants and Lian Tong entered into a "new

4

written contract," which released appellants' from the BW contract in exchange for a payment of $20,500 to Lian Tong and its agent, Y.F. Liu. When this new contract was negotiated, Y.F. Liu represented that appellants would be released from the BW contract if they paid $20,500, but Lian Tong and Y.F. Liu never intended to release appellants or cancel the BW contract.

Pretrial litigation was vigorous and protracted, as documented in the 30-page register of actions for the underlying case. Meanwhile, the parties actively pursued discovery, taking 11 depositions, exchanging interrogatories, and disclosing experts. Chen, appellants Wu and Lei, and respondent Liu all gave depositions. However, Y.F. Liu was in China, and the trial court denied appellants' motion to compel Lian Tong to produce Y.F. Liu for a deposition.[1]

In January 2019, appellants filed a first amended cross-complaint, which included the following new allegations: Immediately before the BW contract was executed, Y.F. Liu made false representations that Lian Tong had obtained all necessary approvals to begin construction, and that construction could begin immediately. When the BW contract was executed, Lian Tong's restaurant project had not been approved by the Palms Owners' Association (the Palms). Lian Tong's delay in obtaining approval from the Palms constituted a breach of the BW contract, prevented BW Construction from performing its contractual obligations, and "barred" Lian Tong from terminating the BW contract, appellants alleged. Appellants alleged further that they were harmed because Lian Tong misled them to believe that approval from the Palms had been obtained, and then "unreasonably delayed in obtaining [that] approval until January 2015."

---

[1] The register of actions lists several documents that appear to be relevant to matters discussed in the appellate briefs, but that the court does not find in the Appellants' Appendix, such as this discovery order.

5

Lian Tong challenged appellants' amended cross-claims by filing a motion to strike, a motion for judgment on the pleadings, and a motion for summary judgment. To support its summary judgment motion, Lian Tong obtained a declaration from Y.F. Liu that was executed in China. Y.F. Liu stated, among other things, that: Chen and his partner BW Construction agreed to build the restaurant pursuant to plans for the initial work that had been prepared by Derrick Wu, and Lian Tong provided those approved plans and permits to BW Construction, as the BW contract required; prior to execution of the BW contract, Y.F. Liu did not say or represent that Lian Tong had already obtained approval for the project from the Palms; BW Construction and Chen caused delays by failing to obtain consent for construction from the Palms and by failing to take other steps necessary to commence construction; when the BW contract was terminated, Y.F. Liu did not represent that appellants or Chen would be released from the contract but only that the agreement was terminated.

On May 14, 2019, the superior court granted Lian Tong's motion to strike portions of the first amended cross-complaint, including appellants' prayer for attorney fees, which was stricken because they failed to allege any contractual or statutory basis for recovering attorney fees. The court also granted Lian Tong's motion for judgment on the pleadings, but granted appellants leave to amend its fraud claim and to allege a new cause of action for recission of the 2015 termination contract. That ruling mooted Lian Tong's fully briefed motion for summary judgment, which was taken off calendar. The following month, appellants dismissed Y.F. Liu as a cross-defendant. The register of actions shows that appellants filed a second

amended cross-complaint, but as best we can determine, this document is not in the appellate record.[2]

In September 2019, Lian Tong filed its operative first amended complaint, which included the following new allegations:  BW Construction was a 50/50 partnership between appellants and Chen.  The BW contract required Lian Tong to provide "approved and stamped plans for the project," but did not hold Lian Tong responsible for obtaining approvals from entities other than the city's building department, such as the Palms.  When the BW contract was negotiated, the parties knew that Y.F. Liu did not speak English and was soon to leave on a trip to China.  So they made an oral agreement that the Chen-BW Construction partnership would obtain any additional approvals that were required "to commence and complete the construction of the restaurant."  Subsequently, when Lian Tong learned that appellants and Chen failed to obtain approval from the Palms, it "mitigate[d] this breach" by enlisting other agents who assisted Lian Tong in finally securing approval from the Palms on January 5, 2015.

### C. The Trial

In late October 2019, the case was assigned for a jury trial before the honorable Newton Lam.  Lian Tong filed an in limine motion seeking permission for Y.F. Liu to testify via Skype from China, which appellants opposed pursuant to a prior discovery order.  When appellants' motion to

---

[2] Appellants have filed a 4,193-page Appellant's Appendix, which is accompanied by indices that list multiple "Compendium[s] of Evidence" some containing hundreds of pages of documents.  Appellants' indices are inadequate.  (Cal. Rules of Court, rule 8.124(d)(1), rule 8.144(b)(5).)  Each volume of an appellants' appendix must include an index that lists "each document" contained in the appendix, and the "page where it first appears." (Rule 8.144(b)(5)(A).)

7

compel Y.F. Liu's deposition was denied, the court had ruled that Lian Tong would not be permitted to rely on Y.F. Liu's declaration or trial testimony "unless and until" they made arrangements for appellants to take his deposition.

During the in limine hearing, Lian Tong argued that Y.F. Liu should be permitted to testify at trial notwithstanding the discovery order because he had been restricted by the government from leaving China and, under international rules, his deposition could not be compelled but his testimony at trial potentially could be. The trial court recognized that Y.F. Liu was a "significant witness" for "every side" because he was "the primary mover with regards to the inception of the relationship between the parties." But ultimately it barred Y.F. Liu's testimony pursuant to the discovery order.

Appellants also filed a successful pretrial motion to limit the testimony of Lian Tong's expert, Derrick Wu. According to Lian Tong, Wu is a licensed architect and construction manager with 30 years' experience. Lian Tong anticipated eliciting a wide range of opinions from Wu, including that BW Construction was responsible for obtaining approval from the Palms. However, at trial the court limited Wu's expertise "to that of an architect."

In November 2019, the jury trial was held over the course of two and a half weeks. During trial, appellants dismissed their rescission claim against Lian Tong and elected to go forward on their cross-claim for fraud. After the close of evidence but before the case was submitted to the jury, the court ruled on multiple motions for directed verdicts.

Appellants sought a directed verdict of Lian Tong's breach of contract claim pursuant to their affirmative defense that performance of the BW contract was impossible, arguing that they could not have completed the contract before it was terminated due to delays in obtaining approval from

8

the Palms. Characterizing this defense as an issue of law, the court concluded that because approval from the Palms was not obtained until January 2015, BW could not have completed its work within the six-month contract period. On this basis, the court granted appellants (and Chen) a directed verdict as to Lian Tong's cause of action for breach of the BW contract. By contrast, the court found that appellants' cross-claim for fraud was based on issues of fact. Thus, although the court expressed confusion and skepticism about appellants' fraud theories, Lian Tong's motion for a directed verdict of that cross-claim was denied.

On December 5, 2019, the jury returned verdicts on remaining claims. We do not find a complete set of the verdicts in this appellate record, but it appears from the judgment, that the jury found Lian Tong proved only one claim, its negligent misrepresentation claim against Chen, for which it was awarded $35,880. Moreover, Lian Tong was held liable to appellants for fraudulent misrepresentation, although appellants were awarded $75,000 instead of the $501,000 in damages they requested during closing argument.

## II. The Malicious Prosecution Case

In January 2021, appellants filed a complaint against Lian Tong and Horner Law for malicious prosecution based on the filing and continued prosecution of Lian Tong's cause of action for breach of the BW contract. Appellants allege that Lian Tong's breach of contract claim was not supported by probable cause because there was no basis for disputing that: Lian Tong had the contractual duty to obtain all approvals for the restaurant project; Lian Tong did not obtain approval from the Palms until January 2015; and six months from that approval date had not passed when Lian Tong terminated the BW contract.

9

Appellants also allege that Lian Tong attempted to manufacture probable cause to sue appellants by suppressing evidence that it had not obtained approval for its project when the BW contract was executed, and by purporting to rely on an approval letter from the Palms that was dated January 5, 2014, despite knowing that the letter was misdated, as the Palms did not actually approve the project until January 5, 2015. Appellants allege that they did not discover the letter was misdated until October 2018, when Veronica Nguyen was deposed on behalf of the Palms. After Nguyen's deposition, respondent Dooley allegedly became "frantic," and respondents subsequently served a statutory offer to compromise Lian Tong's claim against appellants in exchange for a waiver of costs. Appellants characterize the offer to compromise as "an acknowledgement" that Lian Tong's claim against appellants was "objectively baseless, fabricated, groundless, meritless, unsupported, and untenable."

Appellants allege further that the underlying action was filed for an improper purpose. Lian Tong's alleged purpose was "pay back," because Lian Tong's owner, respondent Liu, believed that appellants had stolen the BW contract funds and abandoned the restaurant project. And Horner Law allegedly pursued the claim because they wanted "exorbitant attorneys' fees and bills."

In April 2021, Horner Law filed a special motion to strike appellants' complaint (§ 425.16), arguing the malicious prosecution claim challenges activity protected by the anti-SLAPP statute and there is no probability appellants' will prevail on their claim at trial. The trial court agreed, and granted Horner Law's motion. Subsequently, Lian Tong filed their anti-SLAPP motion, making essentially the same arguments Horner Law made. After the court granted Lian Tong's motion, Horner Law and Lian Tong filed

10

motions for attorney fees and costs.  (§ 425.16, subd. (c)(1).)  Both motions were granted.  Horner Law was awarded $115,577.30 and Lian Tong was awarded $45,031.

## DISCUSSION

Appellants contend the trial court erred by granting the anti-SLAPP motions, and for that reason alone the attorney fee orders must also be reversed.

## I.  Standards Governing Anti-SLAPP Motions

Section 425.16 authorizes a special motion to strike a cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue.  (§ 425.16, subd. (b).)  "The purpose [of the statute] is to curtail the chilling effect meritless lawsuits may have on the exercise of free speech and petition rights, and the statute is to be interpreted broadly to accomplish that goal.  (§ 425.16, subd. (a).)" (*Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 998.)  To resolve an anti-SLAPP motion, the trial court engages in a two-step process:  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . .  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon*).)

Appellants concede that respondents made a threshold showing that the anti-SLAPP statute applies in this case.  A "cause of action [for] malicious prosecution arises from an underlying lawsuit and involves allegations that the defendant committed a tort by engaging in the underlying action." (*Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 784

11

(*Neurelis*).) Thus, malicious prosecution claims "fall within the purview of the anti-SLAPP statute." (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 (*Jarrow*).)

Under the second step of the section 425.16 inquiry, appellants had the burden to produce evidence of a probability of prevailing on their claim. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) To meet that burden, they were required to establish that their malicious prosecution claim " ' "is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment" ' " if their evidence is credited. (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 19–20.)

"A claim for malicious prosecution requires that the plaintiff demonstrate (1) the defendant brought (or continued to pursue) a claim in the underlying action without objective probable cause, (2) the claim was pursued by the defendant with subjective malice, and (3) the underlying action was ultimately resolved in the plaintiff's favor." (*Lane v. Bell* (2018) 20 Cal.App.5th 61, 67.) Here, the trial court found that appellants failed to make a sufficient prima facie showing to establish the first two elements of this claim. We independently review the trial court's findings on appeal. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

## II.  Probable Cause

" 'An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted.' " (*Neurelis*, *supra*, 71 Cal.App.5th at p. 800.) This inquiry " 'calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct.' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 776 (*Parrish*).) It is not sufficient to establish that the prior claim was " 'ultimately found to lack

merit.' " (*Neurelis*, at p. 800.) The prior claim is "unsupported by probable cause only if ' " 'any reasonable attorney would agree [that it is] totally and completely without merit.' " ' [Citations.] 'This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." ' [Citation.] The standard safeguards the right of both attorneys and their clients ' " 'to present issues that are arguably correct, even if it is extremely unlikely that they will win.' " ' " (*Parrish*, at p. 776.)

Applying these principles, we affirm the finding that Lian Tong's breach of contract claim against appellants was legally tenable. The BW contract stated that work would commence once the owner provided approved permits and drawings, without identifying any specific permit or drawing or delineating what approvals were required. The contract required Lian Tong to provide the "approved & stamp[ed] plan," but it did not define this handwritten term that was added to the typed contract, or otherwise address who was responsible for obtaining approval from the Palms to start construction work at the site of the restaurant project. Thus, the language of the contract did not foreclose Lian Tong's theory that they were required to provide BW Construction with copies of the preliminary architectural plans and designs that had been approved by the city, and that any subsequent approval, such as authorization from the Palms, would be secured by the contractors.

Moreover, Lian Tong had evidence to support their theory. In 2013, the city approved Lian Tong's preliminary construction plans and issued permits authorizing work to begin.[3] Prior to execution of the BW contract, Lian Tong

---

[3] Appellants have filed two requests for judicial notice of documents pertaining to an application for an additional building permit that was dated

13

architect Derrick Wu discussed the project with a representative of the Palms who stated that the Palms did not oppose the project. And, after the BW contract was executed, Y.F. Liu told Liu that Chen had agreed to obtain formal approval from the Palms. Other witnesses who had been involved in the project testified that they too believed that Chen was responsible for obtaining approval from the Palms, including Palms representative Victoria Nguyen. There was also evidence that Chen did take steps to obtain approval from the Palms during the period the BW contract was in effect. Under these circumstances, it cannot be said that all reasonable lawyers would agree that Lian Tong's breach of contract claim was totally and completely without merit.

Appellants argue that evidence that BW Construction had a contractual obligation to obtain approval from the Palms is irrelevant, characterizing the issue of who was responsible for obtaining this approval as a "red herring." The record of the underlying action shows otherwise. As our background summary reflects, the pleaded theory in the operative first amended complaint was that BW Construction and Chen breached the BW contract by failing to do any work during the period the BW contract was in effect, which included failing to secure approval from the Palms. Appellants did not just dispute this claim, they based their cross-complaint on allegations that it was Lian Tong rather than BW Construction who breached the BW contract by failing to secure consent for the project from the Palms.

April 8, 2014. These requests are denied for two reasons. First, appellants are seeking notice of documents that were not before the court that ruled on the anti-SLAPP motions. (See e.g., *Jozefowicz v. Allstate Ins. Co.* (2019) 35 Cal.App.5th 829, 837, fn. 4.) Second, appellants fail to show that these documents are relevant to a material issue on appeal. (See e.g., *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

Appellants insist that the question of who was responsible for obtaining Palms approval never mattered in the underlying case. They reason that regardless of who was responsible for obtaining approval from the Palms, there was no basis for disputing that this necessary approval had not been secured in time for BW Construction to complete its work within the six-month contract period. At oral argument before this court, appellants presented another version of this theory, which posits that Lian Tong lacked probable cause because there was no basis for disputing that approval of the final design plans for the restaurant had not been obtained from the City's Department of Building Inspection in time for BW Construction to complete its work within the six-month contract period. These hindsight arguments are both versions of appellants' impossibility defense, which resonated with the trial court and resulted in the directed verdict. But the fact that appellants were able to prove their defense at trial does not mean there was no probable cause for the substantively different breach of contract claim alleged and litigated by Lian Tong, which was that appellants breached the BW contract not only or specifically because they failed to complete the project within six months, but because they failed to do any work, including failing to obtain approval from the Palms.

Appellants offer three reasons why their successful result below compels a finding that Lian Tong's breach of contract claim was prosecuted without probable cause. First, they contend that the directed verdict they obtained from Judge Lam compels a finding that there was no probable cause for Lian Tong's breach of contract claim. Appellants reason that Judge Lam's finding that there was no substantial evidence to support a verdict in favor of Lian Tong at trial proves that Lian Tong's claim was objectively untenable. An analogous argument was rejected in *Jarrow*, *supra*, 31 Cal.4th 728, which

15

involved a malicious prosecution case that was filed after the underlying case was dismissed on summary judgment. As the Supreme Court explained, the fact that an underlying claim was terminated based on a finding of insufficiency of the evidence does not establish as a matter of law that probable cause to bring that claim was lacking. (*Id.* at pp. 742–743.) "[E]very case litigated to a conclusion has a losing party, but that does not mean the losing position was not arguably meritorious when it was pled. [Citation.] And just as an action that ultimately proves nonmeritorious may have been brought with probable cause, successfully defending a lawsuit does not establish that the suit was brought without probable cause." (*Id.* at p. 743.)

Appellants rely on *Puryear v. Golden Bear Ins. Co.* (1998) 66 Cal.App.4th 1188, which holds that "probable cause requires evidence sufficient to prevail in the action *or* at least information reasonably warranting an inference there is such evidence." (*Id.* at p. 1195, italics added.) Appellants ignore the second part of this holding, which confirms that the probable cause analysis is substantively different from the question whether the underlying claim was ultimately proven by substantial evidence. (See also *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152, 156–157 ["probable cause is lacking 'when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial' "].) Here, for example, Lian Tong's version of the events depended largely on Y.F. Liu, as he negotiated the BW contract on their behalf. Lian Tong also relied on expert testimony to support its theory that BW Construction was responsible for obtaining approval from the Palms. It was not until the case went to trial that it became clear that Y.F. Liu's testimony

16

would be excluded, and that Derrick Wu would not be qualified as an expert regarding the responsibilities of a contractor. These facts provide additional support for concluding that Lian Tong's claim was supported by probable cause.

Appellants' second theory is that respondents are collaterally estopped from disputing that the underlying breach of contract claim was unsupported by probable cause. The same theory was rejected in *Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1049, which we follow here. Collateral estoppel precludes re-litigation of an issue only if it is " 'identical' " to an issue that was previously litigated and actually and necessarily decided on the merits in a prior proceeding. (*Id.* at pp. 1048–1049.) The issue whether probable cause supported Lian Tong's breach of contract claim was neither litigated nor necessarily decided in the underlying action.

Finally, appellants contend that a finding of probable cause cannot be based on the evidence that Lian Tong relied on in the underlying litigation because, when the court rules on an anti-SLAPP motion, all conflicts in the evidence must be resolved in favor of the plaintiff. (Citing *Lee v. Kim* (2019) 41 Cal.App.5th 705.) "[I]n the 'summary-judgment-like procedure' of a special motion to strike we do not weigh evidence or resolve conflicting factual claims. [Citations.] We further must draw all reasonable inferences from the evidence in favor of . . . the plaintiff." (*Id.* at p. 720.) But contrary to appellants' contentions, these principles do not preclude us from considering the evidence Lian Tong relied on below. Indeed, that is the very inquiry we must undertake to conduct a probable cause inquiry. To put the matter another way, by confirming the trial court's finding that some evidence supported Lian Tong's breach of contract claim, we are neither crediting that evidence nor resolving conflicting factual claims. We are

17

simply recognizing that a reasonable attorney could find that Lian Tong's claim was not totally and completely without merit. (*Parrish*, *supra*, 3 Cal.5th at p. 776.)

Appellants make lengthy arguments about why their evidence in the underlying action, when considered in isolation and viewed favorably to them, doomed Lian Tong's breach of contract claim. These arguments do not alter our conclusion because the issue here is not whether appellants were entitled to a favorable judgment in the underlying case. The issue is whether Lian Tong's claim was objectively untenable and, as discussed, they had evidence to support their pleaded theory. Thus, we affirm the trial court's finding that appellants fail to carry their burden of proving that Lian Tong's breach of contract case was prosecuted without probable cause.

## III. Malice

"The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874.) "The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose. [Citation.] The plaintiff must plead and prove actual ill will or some improper ulterior motive." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494, italics omitted; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 [quoting *Downey*].) Facts showing that a prior claim was filed without probable cause may support an inference of malice. (*Soukup*, at p. 292; *Downey*, at p. 498, fn. 29.) But "the absence of probable cause alone is insufficient to establish a prima facie case of malice." (*Roche v. Hyde* (2020) 51 Cal.App.5th 757, 826–827.) " 'In other words, the presence of malice must

18

be established by other, additional evidence,' " and must " 'include proof of either actual hostility or ill will on the part of the defendant or a subjective intent to deliberately misuse the legal system for personal gain or satisfaction at the expense of the wrongfully sued defendant.' " (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

Applying these principles, we affirm the trial court's finding that appellants fail to make a prima facie showing of malice as to either set of respondents. Appellants unsuccessfully rely on the rule that malice can be inferred from the absence of probable cause because, as explained, they fail to show that Lian Tong's breach of contract claim was unsupported by probable cause. Moreover, appellants produce no additional evidence to show that either Lian Tong or Horner Law had an improper motive for bringing the prior action.

Appellants contend that respondent Liu's trial testimony in the underlying action constitutes evidence of Lian Tong's malice. Specifically, appellants rely on testimony by Liu that he made the decision to sue appellants because he believed they had stolen contract funds and abandoned the project, which made him angry. Testimony to this effect would show that Liu was angry at appellants because he genuinely believed they breached the BW contract, which is not evidence of a nefarious motive unrelated to a legitimate litigation purpose.

Appellants also argue that malice can be inferred from respondents' failure to conduct a factual investigation before filing the underlying action, citing *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 607–608. In that case, a jeans manufacturer (Citizens) obtained a dismissal with prejudice of a class action lawsuit alleging that Citizens engaged in an unfair business practice by mislabeling its jeans, and then filed a malicious

19

prosecution action against two class representatives and the attorneys who filed the underlying action.  (*Id*. at pp. 593 & 595.)  A special motion to strike Citizens' complaint was denied because Citizen's evidence was sufficient to establish a probability of prevailing on the merits as to each element of the malicious prosecution claim.  (*Id*. at p. 597.)  Prima facie proof of malice included evidence that the underlying lawsuit was filed on behalf of a "shill plaintiff," for the improper purpose of forcing a settlement that was not related to the merits of the claim, and that attorneys filed the action without investigating the factual claims of the class representatives.  (*Id*. at pp. 606–607.)  We find no comparable evidence of malice in this record.

Appellants use perceived weaknesses in Lian Tong's breach of contract case to infer that an adequate investigation was not conducted.  We are not persuaded by these convoluted arguments.  For example, appellants contend that during trial in the prior action, Liu admitted he did not have personal knowledge about the negotiations that culminated in the 2015 termination contract, and that this so called admission is proof that Lian Tong filed the underlying action without knowing the true facts.  We disagree.  Liu relied on an agent (his father) to negotiate the contracts, a circumstance that does not strike us as remarkable or uncommon, and that does not support a reasonable inference of malice.  Appellants also posit that Horner Law "did not discuss" or "investigate any of the case facts" with their clients.  But they cite no evidence to prove these accusations, which are contradicted by attorney declarations that were filed in support of the anti-SLAPP motions.

Taking a different tack, appellants contend that respondents did know the true facts, and yet knowingly presented false ones, thus showing their malice.  Appellants cite *Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, which states that malice can be found when "a plaintiff 'asserts a claim with

20

knowledge of its falsity.' " (*Id*. at p. 877, italics omitted.) Appellants attempt to invoke this rule by contending that Lian Tong's original complaint "falsely alleged construction was required to be completed by October 2014." First, the original complaint contained no allegation to the effect that the BW contract *required* that construction be completed by October 2014. Rather, Lian Tong alleged that "[t]he parties agreed and understood that pursuant to the terms of the [BW contract], the Project was to be completed within six months or approximately by early October 2014." Moreover, the BW contract was attached and incorporated into the original complaint, thus undermining appellants' apparent theory that Lian Tong somehow misrepresented what the contract actually said.

Appellants also contend malice can be inferred from alleged discovery abuses by respondents, citing *Roche v. Hyde*, *supra*, 51 Cal.App.5th 757. That malicious prosecution action was filed after termination of a lawsuit arising out the sale of Roche's winery to Ram's Gate. In the underlying litigation, Ram's Gate alleged that Roche was liable for breach of contract and fraud for withholding a seismic report that materially impacted the value of the winery, but dismissed its action after evidence emerged that the report had been disclosed to Ram's Gate attorney Hyde prior to the sale, and that Ram's Gate had violated multiple discovery orders by suppressing this fact. In Roche's malicious prosecution action, the appellate court affirmed orders denying anti-SLAPP motions filed by Ram's Gate and Hyde. (*Id*. at p. 769.)

In *Roche v. Hyde*, *supra*, 51 Cal.App.5th 757, the two primary issues on appeal were whether the winery litigation terminated in Roche's favor and whether Ram's Gate lacked probable cause to bring it, but the court also rejected attorney Hyde's contention that Roche failed to make a prima facie showing of malice. *Roche v. Hyde* confirms the general principle that lack of

21

probable cause can raise an inference of malice but that the absence of probable cause alone is insufficient to establish a prima face case of malice. (*Id*. at pp. 826–827.) Roche's additional evidence of malice consisted of "a pattern of discovery misconduct and the manner in which it was carried out." (*Id*. at p. 827.) Specifically, Roche showed that the Ram's Gate parties had deliberately withheld the seismic report in direct violation of multiple discovery orders under circumstances that amounted to fraudulent concealment. (*Id*. at p. 812.)

Unlike the *Roche v. Hyde* plaintiff, appellants fail to show that the underlying claim against them was not supported by probable cause. Nor do they provide additional evidence of malice demonstrated through discovery misconduct. Instead, they misconstrue discovery disputes by portraying them as discovery abuse. For example, appellants attempt to infer malice from the fact that Lian Tong failed to produce Y.F. Liu for a deposition. But appellants' motion to compel Y.F. Liu's deposition was denied. Moreover, the in limine order precluding Y.F. Liu from testifying at trial via Skype was not based on a finding that Lian Tong engaged in misconduct, but that Y.F. Liu was an unavailable witness. Further, appellants likely benefited from Y.F. Liu's unavailability, as Lian Tong sought to rely on his account of discussions with Chen. Appellants ignore all of these pertinent facts, which undermine their theory that the failure to produce Y.F. Liu is proof of malice.

Finally, appellants contend that malice can be inferred from evidence that Horner Law attempted to coerce a settlement from appellants after it became clear that Lian Tong's breach of contract claim was without merit. Appellants base this claim on *Golden State Seafood, Inc. v. Schloss* (2020) 53 Cal.App.5th 21, which is factually inapposite but confirms the general rule that malice can be inferred from continued prosecution of an action after a

plaintiff becomes aware that its action lacks probable cause. (*Id*. at p. 38.) *Golden State Seafood* also confirms the principle that an inference of malice must be supported by some evidence in addition to a lack of probable cause. (*Ibid*.) In that case, there was evidence that the underlying lawsuit was filed for the purpose of securing a settlement unrelated to the merits of the case. (*Id*. at pp. 38–39.)

Here, appellants contend that malice can be inferred from a May 23, 2019, confidential settlement communication Horner Law sent to appellants' counsel. In that letter, Horner Law proposed settling the entire dispute between the parties in exchange for mutual releases. As support for the proposal, Horner Law relied primarily on the fact that the superior court had just granted Lian Tong judgment on the pleadings with respect to appellants' first amended cross-complaint. Horner Law also argued that because appellants had demanded attorney fees in connection with their unsuccessful contract claims, Lian Tong could also demand fees incurred in defeating those claims, even absent an attorney fee clause. And Horner Law pointed out that appellants had yet to pay financial sanctions that had been imposed against them for their discovery violations.

Appellants argue that Horner Law's May 2019 settlement offer is evidence of malice because when the offer was made, Horner Law knew that (1) their client's case was totally lacking in merit, and (2) there was no legal basis for claiming attorney fees against appellants. Both prongs of this argument are flawed.

First, appellants contend that Horner Law had known since October 2018 that their client's case was totally lacking in merit. According to this argument, when appellants took the deposition of Palms representative Veronica Nguyen, Lian Tong's entire case fell apart because Nguyen's

23

testimony established that the Palms had not approved the restaurant project until January 2015.  This fact was dispositive, appellants contend, because respondents "could no longer take the objectively baseless position [that] appellants breached the restaurant construction contract by failing to complete construction by October 2014."  This argument conflates Lian Tong's breach of contract claim with appellants' impossibility defense.  Lian Tong's claim was that appellants breached the BW contract by taking Lian Tong's money and never doing any work on the project, not by failing to complete the entire project within six months of the date that the contract was executed.

The second part of appellants' argument is that malice can be inferred from the May 2019 settlement offer because Horner Law knew they had no legitimate basis for threatening to seek attorney fees from appellants if the case was not settled.  Apparently, Horner Law's claim that it could seek attorney fees was based on a misreading of Civil Code section 1717.  But this legal error does not mean their confidential settlement offer supports an inference of malice.

The record shows that the May 2019 letter was sent shortly after Lian Tong obtained favorable rulings on its motions for judgment on the pleadings and/or to strike appellants' first amended cross-claims.  Thus, the settlement proposal offered appellants an opportunity to end the litigation without incurring the expense of revising their own theories and having to defend against a viable breach of contract claim.  Regardless of whether the "threat[]" to seek attorney fees was objectively sound, it appears that the May 2019 settlement offer was based on Horner Law's subjective assessment of the value of appellants' claims at that point in the litigation.  Appellants fail to point to any other evidence that would support an inference of malice.

24

## IV. The Attorney Fees Orders

Appellants do not separately address the orders granting respondents attorney fees.  Their sole contention is that these orders must be reversed because the anti-SLAPP motions should not have been granted.  As explained, appellants fail to show that the trial court erred by granting respondents' special motions to strike appellants' malicious prosecution claim.

"Section 425.16, subdivision (c) authorizes an award of attorney fees and costs to the prevailing party.  Further, the right of a prevailing defendant to recover attorney fees and costs adequately compensates him for 'the expense of responding to a baseless lawsuit.' " (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1454–1455.)  Respondents are the prevailing defendants on the special motions to strike and, therefore, their motions for attorney fees were properly granted.  (§ 425.16, subd. (c).)

## DISPOSITION

Appellants filed four separate appeals from the orders granting the special motions to strike and awarding respondents attorney fees, which were consolidated in this court.  The appealed orders are all affirmed.  Respondents are awarded costs on appeal.


TUCHER, P.J.


WE CONCUR:


PETROU, J.
RODRÍGUEZ, J.

25

*Bing Wu et al. v. Lian Tong, LLC, et al. (*A163131/A163455/A163635/A163768)